IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 8:18CR00484 |
| | ) | |
| vs. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| ANTHONY DANTE HOLLOWAY | ) | |
| | ) | |

Now comes the defendant, Anthony Dante Holloway, (Holloway) by and through his attorney, and respectfully provides this sentencing memorandum in support of his objection to the classification of his prior conviction under South Carolina Code Section 44-53-370 as a "controlled substance offense" as defined in the United States Sentencing Commission Guidelines Manual (USSG) Section 4B1.2(b).

Holloway has been previously convicted of one violation of South Carolina Code Section 44-53-370. *See* Presentence Investigation Report (PSR) ¶32. Holloway has filed an objection to the classification of this offense as a "controlled substance offense" under the Guidelines. According to the PSR, this prior conviction increases Holloway's base offense level for count one under USSG § 2K2.1(a) from 14 to 20, resulting in an applicable guidelines range of 51 to 63 months for counts one and two and a combined guidelines range of 111 to 123 months for all three counts. *See* PSR ¶¶48, 81. If Holloway's prior conviction under S.C. Code §44-53-370 does not satisfy the guidelines definition of "controlled substance offense," his total offense level would be 16 and his guideline imprisonment range would be 27 to 33 months

on counts one and two, plus a consecutive 60 months on count three, for a total of 87 to 93 months' imprisonment.

The addendum to the PSR states that Holloway's prior South Carolina drug conviction is a qualifying predicate offense under the Guidelines. This conclusion is based on a determination that the South Carolina offense in question, S.C. Code §44-53-370, is divisible and subject to the modified categorical approach. For the reasons articulated below, Holloway respectfully disagrees as to the divisibility of the South Carolina statute and asserts that this Court should not rely on the sentencing sheet as a *Shepard* document.

## I.     South Carolina Code Section 44-53-370 is Indivisible

The Fourth Circuit has recently determined in three cases that South Carolina drug statutes are divisible. However, these opinions - *Rhodes*[1], *Marshall*[2], and *Sultan*[3] – are unpublished and ignore South Carolina law. In *Rhodes*, moreover, the panel assumed, without analysis, that the statute was divisible.

Courts analyze whether a prior conviction qualifies as a predicate offense by applying the "categorical approach," as that term is described in and applied by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 579 U.S. ___, 136 S. Ct.

---

[1] *United States v. Rhodes*, 736 F. App'x 375 (4th Cir. 2018)
[2] *United States v. Marshall*, ___ F. App'x ___, 2018 WL 4150855 (4th Cir. Aug. 29, 2018)
[3] *United States v. Sulton*, ___ F. App'x ___, 2018 WL 5096069 (4th Cir. Oct. 18, 2018)

2243 (2016). Under the categorical approach, a court considers only the elements of the offense of conviction, not the defendant's underlying conduct. If the offense of conviction has the same as or narrower elements than a "controlled substance offense," then the offense of conviction is a qualifying predicate conviction for application of the relevant sentencing enhancement. However, if the prior offense of conviction "sweeps more broadly and criminalizes more conduct" than a controlled substance offense, then the prior offense of conviction is not a qualifying conviction "even if the defendant actually committed that offense in its generic form." *Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014) (quoting *Descamps*, 570 U.S. at 261).

The modified categorical approach "has no role to play" if the offense of conviction is an indivisible offense. *Descamps*, 570 at 264. The Supreme Court has emphasized that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Id.* at 258. When a defendant has been convicted of an indivisible statute, "[w]hatever the underlying facts or the evidence presented, the defendant still would not have been convicted, in the deliberate and considered way the Constitution guarantees, of an offense with the same (or narrower) elements as the supposed generic offense…" *Id.* at 273.

In *Mathis*, the Supreme Court re-emphasized that a court must determine whether a seemingly divisible statute lists separate elements or rather different means of accomplishing a single element. *See Mathis*, 236 S. Ct. at 2249 ("This case

3

concerns a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element."). The Court stressed that courts may not apply the modified categorical approach when the statute lists "diverse means of satisfying a single element of a single crime – or otherwise said, spells out various factual means of committing some component of the offense." *Id.* If the alternatives are means, the court has "no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.* at 2256.

If there is a question about the divisibility of the statute at issue, there is a limited class of documents which this Court should consult in determining whether an offense is divisible. In cases such as Holloway's (involving guilty pleas), the Court should "consider how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are instructed, and the manner in which South Carolina courts treat convictions under these statutes." *Marshall*, 2018 WL 4150855 at *8 (citing *Mathis*, 136 S. Ct. at 2256-57).

First, a review of the statute itself can help determine if the alternatives are means or elements. *Mathis*, 136 S. Ct. at 2256.   If statutory alternatives carry different punishments, then under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), they must be elements. *Id.*

Second, the Supreme Court has instructed that reviewing the underlying indictment may shed light on whether a statute contains several offenses with alternative elements or merely lists alternative ways of committing a single crime.

4

This is confirmed in *Descamps*: a "prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps*, 570 U.S. at 272. "'[A]n indictment or criminal information which charges the person accused, in the disjunctive, with being guilty of one or another of several offences [sic], would be destitute of the necessary certainty, and would be wholly insufficient.'" *Id.* (quoting *The Confiscation Cases*, 20 Wall. 92, 104, 22 L.Ed. 320 (1874)).

Finally, a review of applicable jury instructions can also be helpful to determine if the statutory alternatives are means or elements. *Mathis*, 136 S. Ct. at 2256. "[F]or example,…[if] one count of an indictment and correlative jury instructions charge a defendant with burgling a 'building, structure, or vehicle' – thus reiterating all the terms of…the state's law…[then] that is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.,* 136 S. Ct. at 2257. "Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id. See also United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (jury instructions instructive to show whether statute has separate elements or merely offers alternative means by which crime can be committed; instructions will make clear whether or not each listed factor is a separate element that must be found beyond a reasonable doubt).

Federal courts have no "authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). Rather, "[t]o the extent that the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains [a federal court's] analysis of the elements of state law." *United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014). *See also United States v. Shell*, 789 F.3d 335, 339 (4th Cir. 2015) (courts look to state statute and "the state precedent construing it."). "Where the state's highest court has not decided an issue of state law, the federal courts defer to the state intermediate appellate court decisions, unless…convinced that the state supreme court would rule to the contrary." *United States v. Vann*, 660 F.3d 771, 777 (4th Cir. 2011) (*en banc*).

South Carolina drug statutes are not divisible. A review of the statutes themselves reveals that all of the ways in which the statute may be violated are listed in single subsections. See *Mathis*, 136 S. Ct. at 2256. For example, under South Carolina Code §44-53-370, any conviction when a person "manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver" is subject to the same penalty. *See* S.C. Code Ann. § 44-53-370(b)(1) - (3).

An indictment under South Carolina Code Section 44-53-370, -375, or -445, which lists all the statutory means of committing a drug offense, is not an anomaly

6

in South Carolina drug indictments. For example, in the conviction in *Rhodes*, the defendant's indictment listed all the potential ways of violating the statute, S.C. Code §44-53-445. *Rhodes*, 736 F. App'x at 380. Likewise, the defendant in *Marshall* was charged with two violations of S.C. Code §44-53-445 and one violation of S.C. Code §44-53-370 in indictments which listed all the alternative ways of committing the offense. See Reply Br., *United States v. Marshall*, No. 16-4594, at 15 (4th Cir. Apr. 3, 2017), ECF No. 42.

In its recent rulings, the Fourth Circuit has studiously ignored that the South Carolina Supreme Court has repeatedly held that the various ways of committing South Carolina drug offenses are means, not elements. The South Carolina Supreme Court, in evaluating the similar drug trafficking statute located at S.C. Code Ann. §44-53-370(e)(2), found that listed alternatives were means, not elements: In *State v. Raffaldt*, 456 S.E.2d 390, 394 (S.C. 1995), the South Carolina Supreme Court held that trafficking may be accomplished by a variety of criminal acts, to wit:

> -knowingly selling, manufacturing, cultivating, delivering, purchasing, or bringing ten grams or more of cocaine (or any mixtures containing cocaine) into this State; or
>
> -providing financial assistance or otherwise aiding, abetting, attempting; or
>
> -conspiring to sell, manufacture, cultivate, deliver, purchase, or bring ten grams or more of cocaine (or any mixtures containing cocaine) into this State; or
>
> -knowingly having actual or constructive possession or knowingly attempting to become in actual or constructive possession of ten grams or more of cocaine (or any mixtures containing cocaine).

> *It is the amount of cocaine, rather than the criminal act,* which triggers the trafficking statute, and distinguishes trafficking from *distribution* and *simple possession.*

(Emphases added). In other words, South Carolina's highest state court has explicitly held that trafficking, and similarly-worded drug statutes, list alternative means by which a drug crime can be committed in South Carolina, not separate elements. *See also State v. Harden*, 602 S.E.2d 48, 50 (S.C. 2004) (noting that drug trafficking "may be accomplished by several *means*, including conspiracy.") (emphasis added); *State v. Gordon*, 2004 WL 6396012 at *2 (S.C. 2004) (unpublished) (noting that "[a]s defined in [S.C. Code Ann. §44-53-375(c)], there is no distinction between conspiracy to traffic and the substantive offense of trafficking in crack cocaine; in other words, the statute incorporates conspiracy *as one of a number of ways* the substantive offense may be committed.") (emphasis added); *id.* ("Conspiracy to traffic in crack cocaine is encompassed in the indictment under which respondent was charged, *as one way to traffic* in crack cocaine.").

For example, in *Cutner v. State*, 580 S.E.2d 120 (S.C. 2003), *overruled on other grounds by State v. Gentry*, 610 S.E.2d 494 (S.C. 2005), Cutner was charged in a single-count indictment that alleged the defendant "did…distribute, sell, purchase, manufacture, or unlawfully possess with intent to distribute, a controlled substance, to wit: marijuana, while in, on, or within a one-half mile radius of the grounds of a public or private elementary, middle or secondary school…to wit: Ridgewood Missionary Baptist Church." The South Carolina Supreme Court held

8

this indictment under S.C. Code Ann. §44-53-445 fatally defective *not* because it charged numerous elements of separate offenses in an indictment, but rather because the indictment failed to charge "distributing marijuana within proximity of a school" when it charged "distributing marijuana within proximity of a church…" 580 S.E.2d at 123.

The manner in which South Carolina indictments charge drug offenses has significant constitutional implications. *Descamps*, 570 U.S. at 272. "An indictment meets the guarantees of the Fifth and Sixth Amendments 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). South Carolina courts, like federal courts, recognize, as they must, that it is unconstitutional to fail to put the defendant on notice of the charges against him, including the elements the state must prove and the particular offense charged, so the defendant knows how to defend himself. *See Russell v. United States*, 249 U.S. 769 (1962); *State v. Samuels*, 743 S.E.2d 773, 776 (S.C. 2013) (citation omitted). "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Russell*, 349 U.S. at 1047-48 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)). "[A]n indictment is

defective and entitled a defendant to relief if it is duplicitous, providing it results in prejudice to the defendant." *Samuels*, 743 S.E.2d at 774.

If the statute is divisible, the State's practice of "joining in a single count of two or more distinct and separate offenses[ ]" would be duplicitous. *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (internal quotation marks and citation omitted). The dangers of a duplicitous indictment include a jury confusing the two offenses and convicting based on both offenses; improper notice to the defendant; prejudice in evidentiary rulings; limiting appellate review; exposure to double jeopardy; and the risk that a conviction will occur based on less than a unanimous verdict on each count. *United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008 (unpublished) (citation omitted). On the other hand, an indictment would not be duplicitous if it includes multiple ways of committing a single offense in one count. *United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017).

South Carolina also holds that a duplicitous indictment is defective, entitling a defendant who is subject to duplicitousness to relief. *Samuels*, 743 S.E.2d at 774. If South Carolina drug indictments, which frequently cite the drug statutes verbatim, are, in fact, charging multiple offenses in a single count, which are the conclusions reached in *Marshall* and *Sultan* based on the alleged divisibility of the South Carolina drug statutes at issue in those cases, then South Carolina drug defendants have been unconstitutionally convicted of drug offenses for years. Given South Carolina's position that a defendant convicted under a duplicitous indictment is entitled to relief, and that a defendant has a right to be put on notice

10

of the charges against him, it is simply untenable to believe that South Carolina courts take the position that its drug statutes encompass numerous separate offenses with different elements. *Samuels*, 743 S.E.2d at 774 ("an indictment is defective and entitles a defendant to relief if it is duplicitous, providing it results in prejudice to the defendant."). If S.C. Code §§44-53-370, -375, and -445 consist of numerous different crimes, then countless individuals have been unconstitutionally convicted by the State.

In sum, the statutes at issue, drug indictments in South Carolina, and the case law in South Carolina make it clear that S.C. Code §§44-53-370, -375, and -445 are indivisible statutes. The categorical analysis requires that the state statute prohibit conduct which is necessarily the same or narrower than that defined as "controlled substance offenses" under the Guidelines. As such, Holloway's South Carolina drug convictions under S.C. Code § 44-53-370 are not categorically "controlled substance offenses" under the Guidelines.

## II.     Sentencing Sheets are Not *Shepard*-approved Materials

A South Carolina sentencing sheet, as evidenced by the one provided in this case, contains three pieces of information related to an offense: (1) the statute under which a defendant is charged and convicted; (2) a clerk's descriptive name of the statute; and (3) a CDR code.[4] South Carolina law is clear that the statute listed on

---

4 The CDR code is a relic from days when computers had such limited memory
they were unable to store references to specific statutes with multiple

11

the sentencing sheet, not the other items, is the final word on what the defendant's crime of conviction is.

In *State v. Bennett*, a CDR code was incorrectly entered on a South Carolina sentencing sheet. 650 S.E.2d 490, 495 (S.C. Ct. App. 2007). Because the sentencing sheet was ambiguous, the question was whether the statute or the CDR Code listed on Bennett's sentencing sheet controlled. The Court of Appeals held that "[b]ecause the South Carolina Code of Laws is the controlling authority for classifications, definitions, and penalties for criminal offenses, a statute listed on a sentencing sheet, and not a CDR code, will dictate a criminal's sentence." 650 S.E.2d at 495. Therefore, under South Carolina law, it is the *statute listed* on the sentencing sheet which controls all interpretation of the offense. Accordingly, a South Carolina sentencing sheet, such as the one related to Holloway's prior conviction, offers no *Shepard*-approved material beyond the citation of the statute of conviction. Moreover, it appears to be the practice in South Carolina courts for defendants to execute sentencing sheets *before* a guilty plea is entered. *See Morris v. State*, 639 S.E.2d 53, 55 (S.C. 2006) (defendant "arrived at court and signed a sentencing sheet in anticipation of entering a guilty plea…Petitioner subsequently left the courthouse, and when his case was called, he could not be located."). *See also State v. Nesbitt*, 768 S.E.2d 67, 68-69 (S.C. 2015) (reciting facts of underlying case where there was an additional sentencing sheet for a firearms charge that was not

---

digits.  *State v. Bennett*, 650 S.E.2d 490, 495 (S.C. Ct. App. 2007).

reviewed by the district court prior to defendant's departure from the courtroom, and "[t]hus, although Appellant was never brought back into the courtroom to enter a plea on the firearms charge, the circuit court nonetheless 'accepted' Appellant's plea in his absence and sentenced him to an additional five years' imprisonment…").

Courts investigating a prior conviction under a modified categorical approach may only rely on documents with "the conclusive significance of a prior judicial record," such as charging papers, written plea agreements, plea colloquy transcripts, or "recorded judicial acts of that court limiting convictions to the generic category," *Shepard*, 544 U.S. at 20, to determine whether a defendant was necessarily convicted of an offense with the same or narrower elements as a "controlled substance offense." In pleaded cases, these documents would be "the statement of factual basis for the charge…shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea…" *Id.*

A defendant's signature on a sheet which contains a clerk's handwritten or typed short-hand characterization of an offense, which may have been signed by a defendant prior to an actual entry of plea, does nothing to narrow an overbroad offense to establish that a defendant was necessarily convicted of an offense with the same or narrower elements of a qualifying predicate offense. Therefore, a sentencing sheet is not a *Shepard* document upon which this Court should rely.

WHEREFORE, the defendant, Anthony Dante Holloway, respectfully submits that his prior conviction for South Carolina Code Section 44-53-370 does not qualify as "controlled substance offenses" under the Guidelines.

>Respectfully submitted,
>
>FEDERAL PUBLIC DEFENDER
>Attorney for the Defendant
>
>*s/ Erica Soderdahl*
>Erica Soderdahl (Fed. Bar # 12606)
>Assistant Federal Public Defender
>75 Beattie Place, Suite 950
>Greenville, South Carolina 29601
>(864) 235-8714
>erica_soderdahl@fd.org

February 18, 2019
Greenville, South Carolina